Good morning, Judge Elrodge, Judge Southwick, and Judge Graves. My name is Alfonso Kennard, and I'm counsel for Appellant William Hernandez. May it please the Court, I also want to reiterate that I reserved five minutes this morning for rebuttal. This morning I'm encouraged and reminded that anything is possible since the Cubs won the World Series last night. Oh, you have a better chance than that. Yeah, I hope so. I hope so. But in my time this morning, I'd really like to focus on why the record in this case simply does not support the trial court's granting of summary judgment, and I'll use the vast majority of my time this morning to focus specifically on the issue of retaliation. One way or another, in this matter, all roads lead to retaliation. Now, keep in mind that my client has already shown that Metro has discriminated against him because of his race. Well, how do we know that? He won a jury trial where he was awarded damages for discrimination based on his race. Did that suddenly stop? We can't say for sure. But regardless of whether or not this Honorable Court is compelled to allow Mr. Hernandez to show that discrimination continued against him, there certainly cannot be any question that retaliation must go to a jury. Briefly, as to the discrimination issue, the trial court held that ongoing discrimination was not possible because at least one Hispanic was chosen for one of the sergeant positions. And while it's true that at least one Hispanic was chosen and selected for one of the sergeant positions, this is not the standard by which to summarily dismiss a discrimination claim. Are we talking about one of the positions for which people were tested? That is correct, Your Honor. And there had to be a minimum score of 70? That is correct. And what did Mr. Hernandez score? Well, his scores, once this third-party group submitted the scores, were less than 70, I The problem here, Judge, is that there were discrepancies with his scores, and those were raised to Metro. In fact, he made it known to them, there are discrepancies in my scores. They admitted. The record is clear that his scores were lower. Didn't they make an adjustment, though? Their argument was that even if we made an adjustment, he still would not meet the threshold. Right. 67.42 is what his corrected score would be, right? That's correct. And so, and the little, the instructions say that you don't get the three points unless you get to the 70. That's right. And he doesn't get to the 70 even after it's fixed. Well, I'm just trying to, help me with that. That's unclear. And it's one thing to have a policy and say that this is how it's applied. Part of our contention is that it was not uniformly applied. Now, some of the scores, others had discrepancies, but that was not corrected before they made the position. Now, keep in mind, Metro's an entity that it was made aware to them, even before this particular process for promotion, that there was a problem with their system. And they did, admittedly, take some efforts to correct it. So they were on notice and aware that their system was not correct. And that's what happened here as well. Is there a claim in this lawsuit that, you know, it's, to me, there's kind of a thread in this, in your briefing, that, that this, that the system itself is geared to favor, perhaps whites and African-Americans over Hispanics. Is that, is that a claim in this lawsuit that the, that the whole testing system is not appropriate or that it's favors, it's unfair? You don't have that kind of. This is not a disparate impact claim. Okay. You don't have that. You don't have that claim. This is strictly asked to Officer Hernandez. And he himself was impacted. And that goes back to what I was talking about on the discrimination issue. If we look at the, the case in Fernco and we look at TIA, which is a controlling case, and these are United States Supreme Court cases, it states that discrimination cannot be cured or disproven solely by favorable or equitable treatment of other employees of the same race. So even though we had a Hispanic put into one of these seven positions or minimum one of these seven positions, it does not mean that Officer Hernandez then gets to get his case dismissed. The Supreme Court has held otherwise. Even if someone within your same category is treated favorably, i.e. gets a position, that does not disqualify his claim. How is he treated unfavorably? That's the, if, if it's a test and it's not administered by those, those people that said that he would never rise up in the previous time, then, and we know the test scores and they're applying the test uniformly, how is he not treated fairly? Well, I think we can't presume, Judge, that the test was administered uniformly. Do you have evidence in the record that it wasn't? He testified at his deposition that they, they knew who he was. This was supposed to be a blind testing process, except they knew who he was. And Metro, in the record, admitted specifically that this was our process to ultimately administer and utilize to select candidates. And so you have Hernandez who's told in no uncertain terms after he sued them and won a case against him, Lambert at the time, who was the President and CEO of Metro, says, you will never be promoted. You will always be a patrolman. And quite frankly, that's exactly what happened. If we look back at, at Goudeau, it was sufficient enough for a jury to decide based on the circumstantial evidence. And this Honorable Court, Judge because they said it would happen in that case. So what, what the district judge here said is that was not direct evidence discrimination because there was no context for that statement. He'll never be promoted because I know certain things about him. He's not a reliable employee. None of it was stated as to what the reason. It was a discrimination lawsuit. The testimony, the statement was made in a discrimination lawsuit. But I, you know, there's something to that. How do you get around the absence of any statement by that person, I mean, to the extent it's relevant at all, that there's anything other than just his sense of the, of whether this person deserves promotion based on his ability? Well, and I think how Goudeau in this case Isn't that how the district judge rejected it? I mean, basically on that ground? I, I, I understand your question, Judge. And I think here in this position, in this instance, what's similar with Goudeau and here is that we're looking really ultimately, especially as to the retaliation part of the claim, a but-for standard. In Goudeau, ageist remarks were made. You know, these old fart comments. And ultimately, we were able to get to the court on the discrimination claim based on the fact that they told him, you are going to be gone because you didn't fall in line and you're an old fart. And sure enough, that's what happened. Similarly, here under the but-for standard, it's told to him, you will not be And this goes back to Judge Elrod's question. There's an objective and a subjective component to this testing. On the objective side of the equation, his scores were through the roof. He was scoring at the very top. He's college educated. Not everyone that applied for these positions was college educated. So on the objective side of the analysis, he's at the very top. On the subjective side, he's at the very bottom. Well, this is a fact question at minimum. Metro has admittedly stated, this is our process to administer. And if this was not a blind process as it was intended to be or should have been, then we have a problem here. He only has an issue on the subjective side. And so is there development in the record about what was problematic about the subjective portion of the test? Well, there is, Judge. In fact, Mr. Hernandez wrote a letter to the police chief at the time. This was the letter of August 7, 2012, where he makes it very clear there are issues with the testing. And in fact, it was a very laid out, drawn out memorandum where he tells the chief, we have issues with this. And I think it's not just affecting me, but it's affecting others. Tell me what it is. I'm trying to figure out what subjectively they could have determined that led to his having a score less than 70. So in this August 7, 2012 memorandum from Patrol Officer Hernandez to Chief of Police Victor Rodriguez, he asked for a meeting about the assessment scores. He says that the assessment scores compiled show that he didn't pass the assessment center due to several math calculation errors. And keep in mind, there was an assessment center process. They admitted on the record that there was issue with the scores. Now, at one time previous when I mentioned there was issues with the scores, and I believe counsel for Metro stated at the summary judgment hearing that, well, sometimes lightning does strike twice. They were very aware that this was an issue. In fact, he laid out the specific errors that he found in his score sheet, such as the inter-rater score between two assessors within the same exercise, that there was a two-point difference in those, that an improvised assessor was added to one exercise but not to all exercises. But the most serious was that the score deviation errors between the morning group of 12 candidates and the afternoon group of 12 candidates existed. He lays out specifically with specificity exactly what happened. And I think more importantly, he states, in summary, and this was dated August 7th, this is before the decision was made or the candidates that were selected was announced, I'm sure by now you've been advised of other concerns and errors by other sergeant candidates, and I know you will look into and take whatever corrections necessary. That never happened. But he also states that, unfortunately for me, by the time you read this memo, Metro is probably working on other ways to disqualify me from the sergeant promotional process. He ultimately didn't get any of the positions. While he was at the very top under the objective standard of how this test was administered, he didn't get the position. Now on the discrimination claim, our main contention is that it was not dismissed under the proper standard. If the rationale, which the court stated, was because a Hispanic did not ultimately get into one of those positions, that's flawed under Teal and under Fernco. But on the retaliation side of things, there's a fat question all day as to was the test ultimately administered in a blind fashion as it was supposed to? Do you have to have evidence that Tom Lambert and Tim Kelly were involved in the decision about the sergeant in order? Do you have to have some evidence, like a cat's paw? Do you need that sort of evidence and do you have that evidence? This is cat's paw. Now in terms of the direct evidence, I wish, not just in this case, but in many other cases, I wish I had the direct evidence. I never get folks to admit it and raise their hand. You got me. Yeah, we were involved with this. But the contention is ultimately a cat's paw. Chief Rodriguez was a company guy. He's no longer there now. But he was there to do the bidding of the president and CEO, Lambert. But we don't have anything that they were involved or going to visit him shortly before he made the decision or anything that could even be inferred that he's telling. There's some emails or something. Right, the smoking gun. I remember this guy is the one who sued us before and I don't like. The smoking gun does not exist. However, there is evidence in the record. It's the testimony of Officer Hernandez where he states that it was told to him in no uncertain terms that you will always be a patrolman and you will never be promoted. And that's ultimately what transpired. In terms of the smoking gun, do I have some evidence, some email that sets forth that signed by Lambert or Kelly or anyone else? We don't, which we often do not. Here we just know what happened and we knew what they threatened to do to him and that's what happened. You've got a guy here who's been at Metro for over 20 years, is a lifelong member of law enforcement. That's all he's ever done in his life and career and dedicated most of his career to Metro. He saw some inequities. He filed a lawsuit. He won this lawsuit. We can't lose sight of that. And also on the discrimination side of things, what evidence we have of discrimination? Well, a jury found that discrimination was happening at Metro. But on the retaliation side, he was told, and at minimum we have a fact question as to the content of those assertions. Certainly Officer Hernandez stating that that's what was told to him or what was inferred to him. And Lambert or Kelly or anyone else denying that is a fact question. That is not a question of law. A jury needs to assess the credibility of those witnesses. Your contention is not that the whole policy of the 70 and all the whole thing was set up in order to get Hernandez. Your contention is that within that testing, there is some subjective wiggle room and it was applied in a manner discriminatory to your client. That is correct. And because you have a subjective component that, for instance here, where you have someone who can score a perfect score on the objective side, yet the subjective side could outright eliminate a candidate like it did here. Is that true? Even if he got perfect on all the objective, he could still be below 70? That is correct. I guess my problem is when I ask you for an example, you talk to me about math. And I guess I kind of view math as, for the most part, as scientific as something can be. Two plus two just equals four. And either I get the right answer or the wrong one. So it's hard for me to imagine how a math component of an exam could be subjective. It's more like an equation. So you have, there is an X in there, right? So the total being 70, you've got X plus Y. So regardless of how you are up there, they can always basically get you out of there through the subjective side of things. What is the subjective side of things? That's what I'm trying to get to. I just don't view math. I'm sorry. It's a series of tests. They do mock interviews. They do different things that, like on the test, you don't have that. But you have where the objective written portion of the test is the objective, right? Then the subjective is interviews and how you would deal with the media, different things like that. But the subject, there's a lot of wiggle room on the subjective side of things. And I see that I've run out of time. I'm just trying to follow up. You weren't saying that the math questions on the written portion of the test are subjective, right? That's correct. You're saying that some interview portion is subjective. Correct. That's also part of the test. Is that true? I just want to make sure we have an argument correct. That is correct. And the record is clear that the test itself is made up of two different components, the objective and the subjective. Where is the record? Is the test itself? I'm sorry. I should know that. You can tell us when you come back up. Okay. I will do that. Thank you very much. I see that I'm out of time. Thank you. See you at rebuttal. Even if you got perfect on the objective portion of the test, you could still be below 70 because of the subjective portion of the test. Is that true? No, Your Honor. If you look at the record on the VME testing booklet, it spells out the criteria in which the behavioral competencies were looked at. On the record starting page 157, what they looked at were the concepts of such as the professional and ethical standards. And they were looking at verbal communication, the written communication. VME as an external vendor specifically put out in their booklet the criteria in which they would test these individuals. And, you know, it's one of those things about curveballs, as last night that I saw in the Cubs game. The curveball that the appellant is trying to raise to this court is somehow that this is subjective. However, they may only make one claim of a mathematical error. That claim was regarding the roll call. The two other components of the assessment center they did not even claim were incorrect or were subjective. They simply claimed that it was the mathematical error, which upon correction did still not get them to the 70-point threshold. The record shows that the behavioral competencies, what they were looking for, for both sergeant and the lieutenant positions were clearly spelled out. And that's why they did both the written test as the first stage, as well as the assessment center, which is the second stage. Well, the assessment center, is it people at Metro deciding whether they have ethical behavior competencies or good communication skills or that sort of thing? It's undisputed, Justice Elrod, that the assessors were chosen by our external vendors. And it's also further the appellant admitting his deposition that the assessors did not know who he was. In fact, in the record on 106 and 107, plaintiff admits that he did not know who the assessors were and vice versa, they did not know who he was. And that shows the objective component for the educational testing. So, it's just a coincidence that he twice had mathematical errors that kept him, that affected him negatively in two subsequent things. Of all the people, it's just this gentleman that had that. And, Justice Elrod, within the district court, I made a quip about lightning strikes twice. I've done a little bit of research and I found out it does happen more often. In fact, you know, in the 2011 lawsuit, the claim for retaliation was completely against different people than in the present case. In that case, it was against individuals that did not make the decision in this case. The records clearly establish this. Victor Rodriguez, as the chief of police, made that decision. And the plaintiff, the appellant admitted himself that he had no knowledge of Tom Lambert or Timothy Kelly being involved in the 2012 promotional process. Is Tom Lambert still the head of it, though? Yes, Your Honor. He's the current president and CEO. But on the record, page 120, the appellant admits that he does not know whether Tom Lambert or Timothy Kelly was involved in the promotional process. And he also admits in the record that Victor Rodriguez, as the chief of police, did not know. A couple of other things that connect the context of the subjective component. We cite to this court the case of Little v. Liquid Air. For the proposition that an appellant cannot survive summary judgment on his own conclusory assertions, he cannot do it for some metaphysical doubt. So the whole concept of subjectiveness, I would press the appellant to show to this court in the record where was there a subjective component. The rank order that was given to Chief Rodriguez was from the external vendor VME. There were seven positions open for the sergeant, and Victor Rodriguez looked at that rank order from the external vendors and simply promoted the top seven with a numerical ranking. And there is no evidence, there is not even an allegation of any collusion, of any inappropriate concepts between the external vendor and Chief Rodriguez. But I thought Officer Hernandez argues that Metro took different responses to complaints made by people of other races when they complained about the testing not giving enough promotion to eligible people. What appellant was claiming is back in 2011, there was an African American officer that complained that the chief of police who just came into office, Victor Rodriguez, in midstream of a captain promotional process, changed the job description. What Victor Rodriguez or the claim was, was that he took out the educational component, which then allowed the pool to become larger for Hispanic candidates. In the present case, what appellant is arguing is he complained about the external vendor VME and how they made a math error in his testing. And once Chief Rodriguez saw the math, did the math, and found out that he was still not going to be considered because he did not reach the 70 point threshold, there's the difference. There's the difference of why there was action taken upon him because it did show back in 2011 that midstream during the promotional process for the captain position, the chief of police took out the requirement for education. You no longer need a Bachelor of Science or an equivalent to become a captain. And when VME and LEMIT, which is the, you know, from Sam Houston State, looked at it, they put back that component of education. So that was a wholly different concept. And under the standards set before by the Fifth Circuit, it is under similar circumstances. And we would submit to the court not only it's not similar, but the appellant failed to follow the other tenets of the legal precepts that is spelled out. And that is they must rebut each reason that Appellee has given why appellant was not qualified. He was not qualified for the sergeant position. He was not qualified for the lieutenant position. There were four reasons. He wasn't qualified for the sergeant position. I thought he was qualified previously for the sergeant position. Judge Elrod, I don't believe that's the record. That's not in the record? He was not qualified for consideration of the sergeant because he did not reach a 70-point control. Okay. The previous time he was or something, wasn't he? I thought there was some testimony about that. I think that was his unsubstantiated claim that he was qualified. Okay. I don't know where, Judge Elrod, if ever he was qualified to be a sergeant. Okay. He has applied since 1998 for various supervisory positions. But as we submit his court with the exhaustion of administrative remedies, there's only two non-promotion claims that bear before this court, the 2012 sergeant and the 2012 lieutenant position. And since we talk about retaliation . . . When Ms. Kelly said at some point that he did meet the minimum requirements to be the sergeant, that was in a previous testimony. Yes, Your Honor. Yes, Judge Elrod. You're absolutely correct. He did meet the minimum qualifications to be able to be considered. But once you go to that two-stage promotional process that was set forth by external vendors, he passed the first one. He got a 94 on the written test. But when he went to the assessment center and you look at roll call, you look at media interview, and you look at the third component of in-basket exercises, one mathematical error with a correction, he comes out to 67.42. And this Court has correctly stated the other argument in district court was, but wait a minute, I get three additional educational points. And as the argument to the district court was, this is the first time that Metro has raised it, that Appley has raised it. The record is very clear on page 166 of the record. You do not get three additional educational points unless you reach the threshold on each stage. So basically  testimony, or is that the — what is that? That is the VME booklet, Your Honor. Okay. So it's clear from something in printed materials how the three points work. Yes, Your Honor, which is given to each candidate before the testing. Is there any evidence in the record that someone got three points without meeting those minimum? Your Honor, the — we have to go back to the seventh, the top-ranked seven, and to see if they have a bachelor of science, if they have a master's degree, because by operation they would get the three additional points. Because they reach the 70, then they get three other points. I'm asking, did anyone not reach the 70, but still get the three points, other than — you know, Mr. Hernandez did not get the three points. Is there anyone in the record who got the three points that was below the 70? I understand your question. I — no, Your Honor. Okay. Yeah. And so, since we're talking about retaliation, and what we submitted to this court was the issue of causation. And we've talked about the 70-point threshold, but in causation we believe that there's a case that is before this court that is — that should be on point, and that is the Long v. Eastfield College. And in that case, what we submitted was the — this circuit said that if the president made an independent investigation in that case, that breaks the causation chain. And we believe in this case, it's very similar in a context, that there was an independent outside external vendor that created, implemented, and carried out the testing, and provided the chief of police with the rank order. And so we believe our case is very analogous to Long v. Eastfield, and that is the chain is broken in a concept that chief of police took what our external vendor said. Now, in their briefing, appellant says, well, this is nonsense, because chief of police knew about it. Knowing about it doesn't get you there. Knowing — And just to be clear, because when you say rank order, and I think what we have here is we have seven people who were promoted. Is that right? Yes, Justice. From among, apparently, the 12 who had met all of the qualifications. But the rank order would occur, and I think it's one of the reasons that the additional three points would be for those who reach 70. If you get three points, or if you scored higher than 70, 75, 76, it becomes important, because when that information is going back to the employer, then you're going to be ranked based on a score. Which is to say, you can meet the minimum qualification, but they may never get to you, for example, if there are only two sergeant positions, and you have somebody who had a 75, somebody else with an 80, somebody else an 85, and you had a 73, so you may be — you may qualify, but it may be a while before they get to you, because you've got to wait for the vacancies, because you're ranked. Isn't that how it happens? That's correct. All right. That's correct, Justice Graves. Appellants also raise a concept that the district court erred because it did not follow Connecticut v. Thiel, and its predecessor, Fernco v. Construction, both U.S. Supreme Court cases. We submit to the court that Judge Ellison absolutely followed both U.S. Supreme Court cases, in a sense that when he looked at the prima facie case, in this McDonnell-Douglas burden-shifting analysis, he looked at the race mix-up, when he said the concept of, well, was it another Hispanic hired into the sergeant position? Both Fernco specifically says that in an intentional discrimination case, a district court is entitled to look at the racial make-up. Connecticut v. Thiel cites Fernco in 1982 afterwards, and basically says, we're not going to address that issue, because in Connecticut v. Thiel, we're a disparate impact case. But in an intentional discrimination case, it's not wholly irrelevant, is what the U.S. Supreme Court said. But not wholly irrelevant is different than, well, it cancels out any other evidence. I mean, that's — That's very correct, Justice Elrod. And we have never submitted in this case, as an affirmative defense or in argument, that somehow a racial mix-up is a license to discriminate Mr. Hernandez, the appellant. Shouldn't we be concerned, though, that Judge Ellison may have looked at it that way, that he didn't look beyond that particular fact? Well, Your Honor, the record from — There's no printed opinion here, correct? There's just a transcript of the hearing and his conclusions afterwards? Yes, Judge Southwick. But I think Judge Ellison, in the record, gives his — the context of that statement. He says specifically on page 511 of the record, on the prima facie case, which is a McDonnell-Douglas-Burton shifting case, whether anyone who was hired outside the plaintiff's protected class — that's the fourth prong of the prima facie case — actually a person within his protected class was promoted at the same time that Hernandez was now promoted. So I think that is lacking also. But that doesn't mean that it's lacking. Under the law, you could still have someone hired in his protected class, but he could still meet prong four. You have to look at the other evidence. And that's exactly correct, Justice Elrod. And although the record does not show that he looked at everything else, he did make that statement for the prima facie case. But Judge Ellison, though, went on to talk about the nondiscriminatory, nonretaliatory reason, and then he talked about pretext. So I believe that Judge Ellison looked at the entirety of the case. Couldn't this case be better analyzed to say that, assuming the prima facie case is met, that they didn't rebut the nondiscriminatory reason? Isn't that a better, cleaner analysis of this case on the discrimination claim? I think cleaner. I think it's going to be up to each individual judge to assess whether it's cleaner. But I think the Burton shifting analysis requires each court, each judge, to go through that. And Judge Ellison did go to the pretext, which, in a cleaner context, both FERMCO, as well as McCoy v. City of Shreveport, as well as Laxton, all Fifth Circuit case, and one U.S. Supreme Court case, says you must rebut each reasoning given by the appellee. And in this case— And I guess my concern in that connection is, because under the McDonnell-Douglas Burton shifting test, when you get to that fourth prong about whether or not someone who was similarly situated within his protected class actually got a promotion, and in this case it did, you could conclude that he makes a prima facie case. And then the next step would be, so now the employer has to offer up some reason for the action they took. And it gets you past the prima facie case. It's much more problematic if a judge determines you don't actually make a prima facie case, if the district court makes that determination. But if you get there, and the employer says, yeah, but this is the reason we made the decision not to promote, and then he says, oh, that's a pretext. But Justice Graves, I mean, we've— And you're saying Judge Ellison went through all of that part of the analysis, although it looks like what he said is no prima facie case. Well, Judge Ellison says no prima facie case. He went through the nondiscriminatory reasoning as well as he went to the concept of pretext. He went through all the burden and the shifting of each burden as required by McDonnell-Douglas, as required by the U.S. Supreme Court. And there are a lot of cases, as we all have read, that clearly states there's a lot of times when an appellant or a plaintiff gets—loses at the prima facie level, and the court does not even proceed to—because the burden shifting is you'll have to go one hurdle, then once you pass that hurdle, then it goes back to the employer. The employer has to jump a little hurdle of production. Once the employer jumps that, then it goes ultimately back to the plaintiff. And that—we can't switch hurdles and just run around and go straight to pretext. And I—but I believe that Judge Ellison did look at the fourth prong and did make a statement that, look, under Fernco and Connecticut v. Teal, I can look at the intent. I can look where not this reasoning goes to motive, where not there's an animus. And he looked at the concept that, look, you've hired across all races for sergeant, for lieutenant. And, therefore, I don't see a prima facie case, but let me go on to the others. And I believe that's what the record establishes, not unsubstantial assertions, not conclusory allegations, not some metaphysical doubt, which is not proper summary judgment evidence before this court. Did either of y'all ask for an opinion? Judge Zellrod, in retrospect, I would have asked for an opinion. But I love New Orleans, and I like being here. I didn't get a chance to watch the game at all last night. But, yes, in retrospect, I think an opinion would have clearly spelled out, not just statements, but set the standard opinion for this court to consider. But I believe, though, that the record is enough, because this court is taking this as de novo. I believe the record, the question really comes down to, with these curveballs thrown by appellant, what's the record say? The record says, didn't know who the assessors were, independent, causations broken, didn't reach a 70-point threshold, and we're not even before this court because appellant has not even raised it. So the issue about retaliation is Victor Rodriguez was a decision-maker as well as the one that promoted, according to VME, an external vendor. If there's any more questions, I'll give back the time to the Court. We have your argument. Thank you, Counsel. May it please the Court. Briefly, and I think it's very important to note that on the discrimination issue, the judge didn't get past prima facie and should have gotten to But on the retaliation component, I think it's important to note that the judge, Judge Ellison, found causal nexus. In fact, in his opinion states that there was a causal nexus. Where we lost on the retaliation side was on the pretext. And again, similar to Beddow, this Court essentially stated that when you have this type of circumstantial evidence and you have these types of statements, that if it's good enough for prima facie, good enough for standard arm retaliation, doesn't mean that you're never going to win on these at the summary judgment phase. So really, quite frankly, Beddow laid out that you can actually get to a jury if you do have this type of circumstantial evidence. And a Court has established, like here, that we got prima facie. We got causal nexus. We just lost on pretext. Now, I think another important item to present is that Mr. Rodriguez owned this process. Metro owned this process. In fact, in a January 12, 2012 memo that's in the record, Rodriguez makes it known to Metro personnel that there's been complaints. We're aware that our process is flawed and we're going to take some efforts. Yet when Officer Hernandez raises these issues, nothing was done. Nothing was investigated. So I think we need to clarify that. Is he correct when he says that the assessors did not know who Mr. Hernandez was? That is a fact question. Hernandez has testified that they knew exactly who he was. How does he know? I mean, how is that not just a fault? It was up to the managers. And even Metro testified. There was testimony that the managers got to decide, ultimately, who got selected. It was Metro's process. Now, this external vendor, you know, I'm not saying that there's some Lambert said, you will never be promoted. So it's a fact question as to the integrity of this process. Now, you've got someone that scored, and I'm not just looking at the miscalculation or the mathematical error. It goes beyond a mathematical error and it goes into a process that is tainted. And a jury should get to decide the integrity of this process. We have someone who scored 94 on the objective side, yet a 54, 55 on the subjective side out of 100 points. He's six shy away from 100 on the objective side, yet he scores the equivalent of an F on every subjective component of this examination. Had he got a 56 or a 57, he would have met the 70 point threshold. That's the difference here. So we can't just assume and infer that it was just because Metro said it was a blind process, that it actually was. And I wish I had that smoking gun and I wish I had that direct evidence. Unfortunately, the law in these types of cases doesn't require it. But what we do know is that Judge Ellison himself did, in fact, find the causal nexus on retaliation. Now, we can't overlook the fact that there were no efforts taken, despite a knowledge and an owning of this process, that no efforts were ever taken as to Hernandez specifically to correct or even investigate. When Hernandez made it known that these issues existed, nothing was done. We can't overlook that fact. Did he take the lawsuit to get his score corrected, or did they correct his score before the lawsuit? The score was never corrected. As far as I know, even after the lawsuit, it was never corrected. It was just simply testimony, oh, it wouldn't have mattered because he wouldn't have met the threshold anyway. It was never done, even to this day. So in his record, it has the wrong score right now? As far as we know, Judge, it still has the wrong number. They took no effort to do anything about it because under the pretext that it wouldn't have mattered either way. Is that a pretext? I mean, I don't know what changing the record would be, what kind of files are maintained. I'm not sure exactly what you're saying here. But the selection was over. What you pointed out would not have put him to 70. So some sort of bookkeeping correction is what you're saying Metro needed to do? I'm not trying to belittle that. Just to Judge Aron's question, if it had been corrected, as far as I know, it's never been corrected. And as I understand it, it was because they just thought it didn't matter one way or the other because it didn't rise to the level of the threshold. But, again, had he scored a 57 or a 58? And perhaps I misperceived what occurred, but my understanding is he pointed out what he believed to be in error in the scoring. Correct, Judge. And, well, but if I tell you you got my score wrong and I should have gotten this many more points for it, and if I say, well, yeah, but when I add those in, it just doesn't equal up to enough. Admittedly, they should have investigated it, but our point there is not on the error itself but on the application of a tainted process. And that's a fact question for a jury to decide the integrity of the process. I see that I'm out of time, but thank you, Judges, for your time this morning. Thank you. We appreciate both of your arguments.